UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cr-00084-MOC-DSC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **DEVON OLIVER KERR,** | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Motion to Suppress (#19). This Motion has been fully briefed and a hearing was held on August 16, 2017. At the hearing, the court heard testimony from multiple police officers, took into evidence authenticated exhibits, and instructed the government to provide additional recordings if any existed. The government's post-hearing response (#28) noted that no further recordings were available. Having considered the motion and reviewed the pleadings, the court enters the following Order.

**FINDINGS AND CONCLUSIONS**

**I.    Background**

This case involves a stop and search of a car at a Shell gas station located at 2624 Sam Wilson Road in Charlotte, North Carolina. Defendant contends that the stop was unlawful. (#19) at 1.

-1-

On December 21, 2016, an undercover police officer observed a white van park at gas pumps in such a manner that its gas tank was on the opposite side of the pumps. The van was sitting in that location for ten minutes. Another car arrived and parked directly behind the white van. The officer then observed a man leave the van and enter the passenger side of the red car parked behind the van. These individuals were looking downward and made motions toward the center console. According to officer testimony, the area was considered a high crime area and a thoroughfare for drug trafficking given its proximity to the interstate. Further, the officer, based on his training and experience, suspected that the individuals' behavior was indicative of a drug transaction.

The officer then radioed for a marked police car to respond. Two other officers arrived. As these officers approached the car, one officer observed quick motion from within the red car. When the officer asked the defendant to roll down the window, the officer smelled marijuana coming from inside the vehicle.

Upon a brief search of the defendant, the passenger, and the red car, the officers found: a digital scale with marijuana residue, an orange pill bottle with Xanax and marijuana, a glass pipe containing marijuana residue, and a firearm. The officer then placed the defendant under arrest and provided a *Miranda* warning. Defendant then made incriminating statements.

## II. Defendant's Motion

Defendant in his motion argues that there was insufficient probable cause to approach, detain, and search the defendant and his vehicle. See (#19) at 4. Defendant asserts that the results of the search as well as the statements and evidence attributable to

the search should be suppressed. Id. The issues before the court include whether the police had reasonable suspicion to stop the vehicle and whether the defendant and his property were searched unreasonably.

A. **Discussion**

The Fourth Amendment protects individuals from unreasonable searches and seizures. One of the well-established exceptions to the Fourth Amendment's prohibition on warrantless stops and seizures is the so-called "automobile exception." See, e.g. Pennsylvania v. Labron, 518 U.S. 938 940 (1996) (per curiam); United States v. Sokolow, 490 U.S. 1 (1989). Under this rule, police may stop a vehicle when law enforcement has a reasonable suspicion supported by articulable facts that criminal activity may be occurring. Sokolow, 490 U.S. at 8. In determining reasonable suspicion, the court uses a totality of circumstances approach to determine whether the officer had a "particularized and objective" basis for suspecting criminal activity. See United States v. Arvizu, 534 U.S. 266, 273 (2002).The standard for reasonable suspicion is less than probable cause and "considerably less than a preponderance of the evidence." See United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008).

An individual's mere presence in a high crime area is not enough by itself to support reasonable, particularized suspicion. See United States v. Bumpers, 705 F.3d 168, 171-72 (4th Cir. 2013). Instead, the court must look to the totality of circumstances, taking activities in context while also highlighting the importance of the training and experience of police officers in the field. Branch, 537 F.3d at 336.

In this case, the defendant in his supporting written argument has given the following description of the facts:

> In the instant matter, the facts observed by Officer Sinnott, even based on his training and experience, reveal nothing more than: A white man was seen pulling his vehicle up behind a white work van at the pumping aisle of a gas station at about 4 p.m. on a Wednesday afternoon. The van had its gas tank on the opposite side from the gas pump and had been sitting in that location for about 10 minutes before a white guy, who had been stopped near the store closest to a gravel parking lot, pulled up behind it. Then a black man got out of the van and got into the passenger seat of the white man's vehicle and they made movements toward the center console of the vehicle and were looking downward. This was a high crime area and a thoroughfare for drug trafficking because of its accessibility to interstate 85.

(#19) at 6. While the defendant includes in his narrative the races of the individuals involved, the facts outlined by defendant are the same facts presented by the officers at the hearing.

Clearly, the facts as presented when considered in light of the totality of the circumstances support finding that the officer's decision to approach the vehicle was based on more than a "hunch," and instead are supported by articulable, particularized facts supporting a reasonable suspicion of criminal activity. Put another way, a police officer here reasonably observed suspicious activity: in a high-crime area known for drug trafficking, an officer observed a van park at a gas station; rather than get out and fill up, the van's driver sat for 10 minutes with the vehicle's gas cap on the side facing away from the pumps. The officer then observed another car park behind this van and and only then did the driver of the van get out of the vehicle and get into passenger side of this second car. The officer then observed movements toward the center console and that the occupants looked down, which the officer believed, based on training and experience, to be indicative of drug-related exchanges. Thus, the officers had a reasonable, articulable

suspicion that criminal activity was afoot when they approached the cars at the gas pumps.

The next issue raised is whether the officers then had probable cause to search the vehicle and detain the occupants.[1] When a second officer approached the red car parked behind the van, the officer smelled marijuana emanating from the car. While defendant argues that this is "irrelevant in the analysis of whether the actions of the [police] were justified" ((#19) at 7), police may detained a vehicle's occupants and search a vehicle (and the containers therein) if officers have probable cause to believe that the vehicle contains contraband or evidence of criminal activity. See California v. Acevedo, 500 U.S. 565, 580 (1982). Probable cause exists when the totality of circumstances convinces a "person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000). The odor of marijuana itself can supply probable cause to effect a search. See United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) ("We have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place."). Clearly, the officers had probable cause to both detain defendant and search the red car.[2]

---

[1] The court notes that defendant pursued a theory at the hearing that the officers who approached the red car and conducted the search were commanded to search the red car before any officer smelled the odor of marijuana emanating from the vehicle. While no evidence supportive of that theory was produced at the hearing, the court instructed the government to search again for any voice recordings, such as police radio captures, that would be relevant to that argument. In its post-hearing Response, the government states that they could not find any such recordings.

[2] Defendant also contends that he did not provide consent for the search. See (#19) at 8. Under the warrantless search exception to the Fourth Amendment, defendant's consent to the search was not necessary given that the officers had probable cause.

Given that the initial encounter and the search which followed were lawful, the physical evidence recovered from this investigation was then obtained without violating the defendant's Fourth Amendment's rights. Further, the resulting statements—especially as it has not been called into question that defendant was given *Miranda* warnings—were also obtained without violating defendant's constitutional rights.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Suppress (#19) is **DENIED.**

Signed: August 31, 2017

Max O. Cogburn Jr
United States District Judge